IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDNA OKAE<br>22203 Cedar Dr.<br>Lawrenceville, NJ 08648<br><br>        Plaintiff,<br>v.<br><br>INDEPENDENCE HOME CARE, LLC<br>348 Applegarth Rd.<br>Monroe, NJ 08831<br>    and<br>TERESA SAJKOWSKI<br>c/o Independence Home Care, LLC<br>348 Applegarth Rd.<br>Monroe, NJ 08831<br>    and<br>VINCENT SAJKOWSKI<br>c/o Independence Home Care, LLC<br>348 Applegarth Rd.<br>Monroe, NJ 08831<br><br>        Defendants. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Edna Okae (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.    This action has been initiated by Plaintiff against Independence Home Care, LLC, Teresa Sajkowski, and Vincent Sajkowski (*hereinafter* referred to collectively as "Defendants" unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. §§ 201, *et. seq.*), the New Jersey Wage Payment Law(s) ("NJ WPL" - N.J.S.A. §§ 34:11-4.1 – 34:11-33), and the New Jersey Wage and Hour Law(s) (N.J.S.A. §§ 34:11-4.1 – 34:11-33 - N.J.S.A. §§ 34:11-56a - 34:11-56a30 and corresponding regulations, N.J.A.C. §§ 12:56 *et. seq.*).

As a direct consequence of Defendants' unlawful actions (including failures to properly pay wages, minimum wage, and overtime), Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights under the FLSA. This Court may also assert supplemental jurisdiction over Plaintiff's state law claims as they arise out of the same nucleus of operative facts as their federal law claims.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiffs are adult individuals, with addresses as set forth in the caption.

7. Defendant Independence Home Care, LLC ("Defendant Entity") is a home care agency located at the above captioned address.

8. Defendant Teresa Sajkowski ("Defendant TS") is part owner and president of Defendant Entity and specifically controlled the terms of Plaintiff's employment, including but not limited to, hiring, firing, discipline, wages, and how she was paid. Defendant TS committed the very wage, hour, retaliation violations asserted in this Complaint.

9. Defendant Vincent Sajkowsi ("Defendnat VS") is part owner of Defendant Entity and also specifically controlled the terms of Plaintiff's employment, including but not limited to, hiring, firing, discipline, wages, and how she was paid. Defendant VS committed the very wage, hour, and retaliation violations asserted in this Complaint.

10. At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff was employed with Defendants for approximately four (4) years.

13. Plaintiff was employed with Defendants as a Certified Home Health Aid ("CHHA").

14. During the beginning of her employment with Defendants, Plaintiff was paid a rate of approximately $120.00 per day regardless of how many hours she worked.

15. In or about November of 2015, Plaintiff took an approximate 3.5 month leave of absence and return to work in or about March of 2016.

16. When Plaintiff return to work in or about March of 2016, she resumed working for Defendants as a CHHA.

3

17. When Plaintiff resumed working for Defendants in or about March of 2016, her pay rate was changed and she began being paid an hourly rate of $8.48 per hour.

18. During the entirety of Plaintiff's employment, Plaintiff worked as a CHHA providing 24-hour around-the-clock care (referred to by Defendants as a "live-in" CHHA).

19. As a live-in CHHA, Plaintiff worked for and was paid by Defendants, but lived with Defendants' client(s) for 24-hours a day, approximately seven (7) days per week, providing him/her with personal care, including but not limited to feeding, bathing, dressing, cooking, running errands, bed and bathroom transfers, and providing them assistance in all other aspects of their daily lives.[1]

20. Despite living in Defendants' client's home 24 hours a day, approximately seven days (7) a week while employed with Defendants as a live-in CHHA, Plaintiff was not paid for all the overtime hours that she worked during this time period, nor was she paid minimum wage during this period of time.

21. For example, during the beginning of 2015, Plaintiff was still being paid a flat rate of $120.00 per day, regardless of how many hours she worked.

22. By way of further example, after Plaintiff's pay rate was changed to $8.48 per hour, Plaintiff was paid for some of the overtime hours that she worked in one week; however, she was not paid for nearly as many hours as she actually worked. By way of example, for the pay period of March 7, 2016 through March 20, 2016, Plaintiff was paid for 88.50 hours of overtime, even though she was working 24 hours per day during the bi-weekly pay period. By way of further example, for the pay period of March 21, 2016 through April 3, 2016, Plaintiff

---

[1] Plaintiff was controlled and managed by Defendants, not by the client. Plaintiff was subjected to the rules, policies, and procedures set forth by Defendants in their Handbook.

4

was only paid for 103.50 hours of overtime that she worked, even though she was working 24 hours per day during this bi-weekly pay period.

23. In fact, throughout 2015 and 2016, Plaintiff was never paid for all the hours she worked over 40 hours in one work week.

24. For each bi-weekly pay period during 2015 and 2016, Plaintiff's overtime hours varied according to her paycheck; however, Plaintiff would almost always work 24 hours per day, approximately seven (7) days per week.

25. Plaintiff and Defendants did not make any agreement excluding sleep time, meal time, or any other periods of time throughout the day from Plaintiff's "hours worked."

26. Defendants also did not have a proper method of keeping track of Plaintiff's time worked or time spent "engaged to wait" while she was a live-in CHHA.

27. While employed as a live-in CHHA, Defendants also did not have a proper method of keeping track of the work assignments that Plaintiff performed while in the client's home.

28. While employed as a live-in CHHA, there were often times when Plaintiff had to wake in the middle of the night in order to provide personal care to the client; however, Defendants' offered no policy or procedure for Plaintiff to be able to report this time.

29. In or about May of 2016, Defendants attempted to implement a system where Plaintiff and her other co-workers would "check out" of their weekly shift and be required to answer questions regarding the amount of time they worked that week.

30. In a memo to Plaintiff and her co-worker's, Defendants' management ordered that each live-in CHHA was required to call into Defendants' toll free number every Tuesday

between 8:30 a.m. and 9:00 a.m. from the client's home phone to "check out" of their weekly shift.

31. During these phone calls, Plaintiff and her co-workers were required to answer "yes" or "no" to four (4) different questions. If the employee answered no to any of the four (4) questions, the system would require them to leave a voice message and then move on to the next question.

32. The four (4) questions that were presented to Plaintiff when she would call in on Tuesday mornings, starting in May of 2016, were as follows:

    i. Do you certify that you worked or waited to work no more than 10 hours per day?

    ii. Do you certify that you had three 1-hour meal breaks, and three 1-hour additional breaks per day where you were free from duty?

    iii. Do you certify that you had 8 hours of sleep and at least 5 hours of uninterrupted sleep per day?

    iv. Do you certify that you did not receive any injuries while working?

33. Plaintiff would answer no to the first three questions, which would prompt her to leave a voice message.

34. Plaintiff continued her aforementioned practice of answering "no" to the first three questions (discussed *supra*) for approximately 1-2 months before Defendants' management tried to force Plaintiff to answer "yes" to all the aforesaid questions. When Plaintiff refused to lie about her work, as Defendants demanded she do, she was eventually told to just stop calling in every Tuesday.

35. The only other instance Plaintiff would have to call-in or call-out to Defendants would be if she was leaving the client's house for vacation (so a new CHHA could cover for Plaintiff).

36. Defendants have committed the following wage, hour, and overtime violations as to Plaintiff:

   A. Defendants have intentionally not paid Plaintiff for all hours she worked on a weekly basis;

   B. Defendants have intentionally not paid Plaintiff for all the time she expended taking care of the client or "engaging to wait" while employed as a live-in CHHA;

   C. Defendants have intentionally failed to pay Plaintiff all overtime she is entitled to on a weekly basis, and have instead reduced the hours Plaintiff worked to avoid full overtime and wage obligations;

   D. Defendants have failed to keep proper records of Plaintiff's time and work while employed as a CHHA for Defendants; and

   E. Defendants also improperly withheld and deducted Plaintiff's pay to the point where she was compensated below the minimum wage in many weeks.

37. Plaintiff is still owed very substantial sums of monies for not properly being paid wages and for not being paid for all overtime she worked.

38. Defendants' actions have been willful and intentional, as management (including the named individual Defendants herein) have perpetuated a payroll scheme to deprive Plaintiff of substantial compensation and intentionally round down and lessen calculations on her bi-weekly paychecks.

39.     Plaintiff complained multiple times to Defendants' management, including Defendant TS and Defendant VS, about their failure to properly pay her for all overtime hours that she worked.

40.     The last complaint Plaintiff made to Defendants' management regarding their failure to properly pay her overtime was during her last approximate two weeks of her employment with Defendants, wherein Plaintiff had complained that Defendants' management had failed to pay her overtime during the week before she took vacation for the birth of her grandchild.

41.     Throughout the last two weeks of Plaintiff's employment with Defendants, Plaintiff continued to push the issue of Defendants' failure to properly pay her overtime.

42.     On or about November 3, 2016, Defendant TS sent a text message to Plaintiff stating that "Vinny will be coming to see you today at 11 to review your pay concerns." Plaintiff requested that Defendant TS pay her the money that was owed to her before sending Defendant VS to speak with her because this was not the first time that Defendants attempted to excuse their way out of properly paying Plaintiff for all overtime hours that she worked.

43.     Following Defendant TS's aforementioned text message, Defendant VS came to the client's home that Plaintiff was working in and proceeded to tell Plaintiff that he was removing her from the case and that her employment with Defendant Entity was being terminated. Defendant VS never discussed Plaintiff's pay concerns with her, as Defendant TS said he would.

44.     At the time of her termination, Plaintiff was not provided with a reason for her termination and instead Defendant VS provided her a hand-written note, simply stating:

> You are hereby notified of your termination from Independence Home Care effective immediately. This note will serve as a

tempory [sic] termination letter until a more formal letter will be mailed to your home.

Independence Home Care will pay you $139.92 for 11 hours of overtime as previously discussed. Payment will be made through our payroll company & processed through direct deposit.

45. Plaintiff was later mailed a termination letter stating that she was terminated for a series of alleged incidents stemming all the way back to June of 2016 (over four months prior to her termination).

46. Plaintiff's termination was completely pretextual and Plaintiff was really terminated because of her complaints of Defendants' wage and overtime violations under state and federal law.

## First Cause of Action
### Violations of the Fair Labor Standards Act ("FLSA")
(Unpaid Minimum Wage & Overtime Compensation)
- Against All Defendants -

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. At all times relevant herein, Defendant Entity is, and continues to be, an "employer" within the meaning of the FLSA.

49. At all times relevant herein, Plaintiff was an "employee" within the meaning of the FLSA.

50. The FLSA requires covered employers, such as Defendant Entity, to minimally compensate its "non-exempt" employees, such as Plaintiff, at a rate of 1.5 times the employee's regular rate of pay for each overtime hour that the employee works (*i.e.* hours in excess of 40 hours in a workweek).

9

51. At all times during her employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

52. Defendants knew that Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

53. Defendants failed to pay Plaintiff 1.5 times Plaintiff's regular rate of pay for every hour that she worked over 40 each workweek.

54. Throughout Plaintiff's employment with Defendants, Defendants also improperly withheld and deducted Plaintiff's pay to the point where she was compensated below the minimum wage in many weeks.

55. As a result of Defendants' failure to pay Plaintiff the compensation (overtime and minimum wage) due to her, Defendants violated the FLSA and caused Plaintiff to suffer damages in the form of unpaid overtime compensation.

56. Defendants TS and VS are personally liable for such violations because they personally oversaw payroll, committed wage and hour violations, and perpetuated the aforesaid unlawful practices.

57. Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages, as well as penalties and interest.

### Second Cause of Action
### Violations of the Fair Labor Standards Act ("FLSA")
### (Retaliation)
### -Against All Defendants-

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. Defendants retaliated against Plaintiff and/or terminated Plaintiff in substantial part because of her complaints to Defendants' management that she was not being properly compensated for her overtime hours.[2]

60. Defendants TS and VS are personally liable for such violations because they personally participated in the retaliatory actions asserted herein.

61. Plaintiff's termination due to his complaints of unpaid overtime wages constitutes unlawful retaliation and a violation of the FLSA.

### Third Cause of Action
### Violations of the New Jersey Wage & Hour Law(s) and the NJ Wage Payment Law(s)
### (Unpaid Minimum Wage & Overtime Compensation and Wages)
### - Against All Defendants -

62. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Plaintiff's First Cause of Action.

64. These actions as aforesaid constitute violations of the NJ Wage and Hour Law(s) and the NJ Wage Payment Law(s).

---

[2] Plaintiff's discharge for engaging in protected activity under the FLSA (by complaining of unpaid overtime) constitutes unlawful retaliation under the FLSA. *See e.g. Katsen v. Saint-Gobain Performance Plastics Corp.*, ––– U.S. –––, 131 S.Ct. 1325, 1329, 179 L.Ed.2d 379 (2011); *Lambert v. Ackerley*, 180 F.3d 997, 1003-05 (9th Cir.1999)(*en banc*); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44-45 (1st Cir.1999); *EEOC v. Romeo Comty. Sch.*, 976 F.2d 985, 989-90 (6th Cir.1992); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir.1989); *Brock v. Richardson*, 812 F.2d 121, 123-25 (3d Cir.1987); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir.1984); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir.1975).

## Fourth Cause of Action
## Violations of the Conscientious Employee Protection Act ("CEPA")
### (Wrongful Termination)
### - Against All Defendants -

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff complained to Defendants' management, including Defendant TS and VS on multiple occasions regarding their deliberate wage and overtime violations under New Jersey and federal law.

67. Plaintiff therefore believes and avers she was terminated for complaining of Defendants' illegal pay practices under state and federal law.

68. Defendants TS and VS are individually liable because they are considered Plaintiff's employer under CEPA, and they made the decision to terminate her in retaliation for the aforesaid protected activities.[3]

69. These actions as aforesaid constitute violations of CEPA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, wages, benefits, and other damages permitted by law;

---

[3] CEPA defines "employer" as "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." *N.J.S.A.* 39:19-2a. CEPA permits liability against "any individual within an employer's organization who has the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains, or who has been designated by the employer on the notice required under section 7 of this act." *N.J.S.A.* 34:19-2(d).

B. Plaintiff is to be awarded liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

E. Plaintiff shall be permitted to have a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esquire
3331 Street Road
Building 2; Ste. 231
Bensalem, PA 19020
(215) 639-0801

Dated: March 23, 2017